**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 18-cv-0454-WJM-SKC

INTERNATIONAL ASSOCIATION OF CERTIFIED HOME INSPECTORS,

    Plaintiff,

v.

FRANK LESH,

    Defendant.

## ORDER GRANTING MOTION TO DISMISS

Plaintiff International Association of Certified Home Inspectors ("InterNACHI") brings claims against Defendant Frank Lesh ("Lesh") arising out of an allegedly defamatory article titled "The Badges We Earn" by Lesh published in the American Society of Home Inspectors' ("ASHI") official publication *The ASHI Reporter*. (ECF No. 4.) InterNACHI brings claims for defamation, commercial disparagement, tortious interference with existing and prospective business relations, and deceptive trade practices. (*Id.*) Now before the Court is Lesh's Motion to Dismiss ("Motion") for lack of personal jurisdiction. (ECF No. 7.) For the reasons explained below, Lesh's Motion is granted and the case is dismissed without prejudice.

### I. LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(2) is to test whether the Court has personal jurisdiction over the named parties. The plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Behagen v. Amateur*

*Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984). As is true here, when the court does not hold an evidentiary hearing before ruling on jurisdiction, "the plaintiff need only make a *prima facie* showing" of personal jurisdiction to defeat a motion to dismiss. *Id*. (citing *Am. Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449, 1454 n.2 (10th Cir. 1983)). A plaintiff "may make this *prima facie* showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). To defeat the plaintiff's *prima facie* case, a defendant "must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

To obtain personal jurisdiction over a nonresident defendant, the plaintiff "must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) (quoting *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999)). Colorado's long arm statute confers the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions. *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005) (referring to Colo. Rev. Stat. § 13-1-124). Thus, the Court need only address the constitutional question of whether the exercise of personal jurisdiction over the defendant comports with due process. *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008)

(the state jurisdictional analysis in Colorado "effectively collapses into the second, constitutional, analysis").

At this stage, the Court accepts the well-pled factual allegations of the complaint as true to determine whether InterNACHI has made a *prima facie* showing that personal jurisdiction exists. *Id.* Any factual conflicts arising from affidavits or other submitted materials are resolved in the plaintiff's favor. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

## II. BACKGROUND

The following summary is drawn from InterNACHI's complaint. (ECF No. 4.)

InterNACHI and ASHI are large, national trade associations of home inspectors, and each other's main competitors. (ECF No. 4 ¶¶ 6, 8.) They compete for members, who join an association for education, marketing, networking, and accreditation. (*Id.* ¶¶ 7, 9.) Both associations offer various levels of membership based on continuing education classes and exams. (*Id.* ¶ 11.) Lesh has been a member of ASHI since approximately 1990 and became ASHI's executive director in 2007.[1] (*Id.* ¶ 13.)

In October 2017, ASHI published an article by Lesh titled "The Badges We Earn" in its official publication, *The ASHI Reporter*. (*Id.* ¶ 15, Ex. 1.) The article included the following statements (the "Statements"):

- "ASHI is the only home inspector organization that is certified by a third party."

---

[1] Lesh retired from ASHI on April 30, 2018, after briefing on the Motion was complete. *American Society of Home Inspectors Announces New Executive Director*, ASHI (Apr. 27, 2018), https://www.homeinspector.org/HomeInspectionNews/american-society-of-home-inspectors-announces-new-executive-director.4-27-2018.2139/Details/Story.

3

- "But what inspectors need to watch out for—and savvy consumers are leery about—are 'purchased designations' that require little more effort than paying a fee and checking a box that says, 'I fulfilled the requirements.' Especially when the same organization issues a myriad of 'certifications.' In fact, the inspector doesn't earn the recognition, he or she just buys it."

(*Id.* ¶ 15, Ex. 1.)

InterNACHI contends that the Statements were understood to refer to InterNACHI and implied that InterNACHI certifications are meaningless. (*Id.* ¶¶ 20–21.) It also maintains that the Statements were made with reckless disregard to their veracity and with malice. (*Id.* ¶¶ 23–24.) InterNACHI alleges that the Statements disparaged InterNACHI and the services of its members, harmed the reputation of InterNACHI and its members, deterred existing members from renewing their InterNACHI memberships, discouraged potential members from joining, and deterred realtors from referring customers to InterNACHI or their certified inspectors. (*Id.* ¶ 22.)

ASHI distributed the October 2017 edition of *The ASHI Reporter* to its members, realtors, and others throughout the United States, including to Colorado residents. (*Id.* ¶ 16.) ASHI also published the article on its website, which is viewable by Colorado residents. (*Id.* ¶ 17.) InterNACHI claims that Lesh knew that *The ASHI Reporter* has wide distribution when he submitted the article for publication. (*Id.* ¶ 18.)

Lesh filed his Motion arguing that this Court lacks both general and specific jurisdiction over him. In support of his Motion, Lesh submitted an affidavit stating that

he has lived in Indian Head Park, Illinois, for the past 39 years, has never lived in Colorado, and does not work in Colorado or own property in Colorado. (ECF No. 7-1.) He adds that he was last in Colorado for an industry conference around 2000 or 2001, and had previously traveled to Colorado for several ski trips and his honeymoon. (*Id.*)

### III. ANALYSIS

InterNACHI concedes that this Court lacks general jurisdiction, but argues that the Court may properly exercise specific jurisdiction over Lesh. (*See* ECF No. 11 at 2.)

"A specific jurisdiction analysis involves a two-step inquiry." *Benton*, 375 F.3d at 1075. First, a court must consider "whether the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court here." *Id.* (internal quotation marks omitted). "Second if the defendant's actions create sufficient minimum contacts, [the court] must then consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *Id.* (internal quotation marks omitted).

As discussed below, InterNACHI fails to establish minimum contacts because it cannot show that Lesh purposefully directed his activities at Colorado or purposefully availed himself of the laws of Colorado. Therefore, the Court's analysis will focus only on the first element of the specific jurisdiction analysis.

### A. Law of Purposeful Availment/Purposeful Direction

The "'minimum contacts' standard requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related

5

activities." *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King*, 471 U.S. at 472). The first step of the inquiry asks whether the defendant "'purposefully directed' its activities at the forum state" or "'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state," depending on the factual context and the nature of the claims. *Id.* No matter the phrasing, the aim of this inquiry is "to ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Id.* (quoting *Burger King*, 471 U.S. at 475).

In the tort context, a defendant has "purposefully directed" his activities at Colorado or its residents when (1) it undertakes an intentional action, (2) the action was "expressly aimed" at Colorado, and (3) the action was taken with the knowledge that the brunt of the injury would be felt in Colorado. *Dudnikov*, 514 F.3d at 1072 (citing *Calder v. Jones*, 465 U.S. 783, 789–90 (1984)); *see also Impact Prods., Inc.*, 341 F. Supp. 2d at 1190. The requisite minimum contacts "must arise out of contacts that the 'defendant *himself*' creates with the forum States." *Walden v. Fiore*, 571 U.S. 277, 277 (2014) (emphasis in original). In addition, the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285. The defendant's conduct must form the connection with the forum state, which in turn provides a basis for jurisdiction over the defendant. *Id.* "To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient

basis for jurisdiction." *Id.* at 286. Finally, the "mere foreseeability of causing an injury in the forum state is, standing alone, insufficient." *Dudnikov*, 514 F.3d at 1077. A plaintiff must establish "not only that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook *intentional actions that were expressly aimed at that forum state*." *Id.* (emphasis in original).

These general principles of personal jurisdiction are modified in cases involving the internet. The internet operates in "every state regardless of where the user is physically located, potentially rendering the territorial limits of personal jurisdiction meaningless." *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011). To avoid such a result, the Tenth Circuit places an emphasis on whether the website or internet user "*intentionally direct[ed]* his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there." *Id*. (emphasis in original). The standard is derived from the Supreme Court's holding in *Calder* that the defendant's conduct must be expressly aimed at the forum state. *Id.* at 1241; *see Calder*, 465 U.S. at 789–90; *Dudnikov*, 514 F.3d at 1072. To satisfy the "expressly aimed" portion of *Calder* under the Tenth Circuit's "restrictive reading" of that case, "the forum state must itself be the focal point of the tort." *Shrader*, 633 F.3d at 1244 (quoting *Dudnikov*, 514 F.3d at 1074 n.9). It is not enough that a plaintiff is a resident of the forum and suffered harm there. *Id*. Simply posting defamatory statements on a website will not, standing alone, form a basis for personal jurisdiction against the poster in any state where the post may be read. *Id.* at 1241. Instead, courts consider whether the "defendant deliberately directed its message at an audience in the forum state and

7

intended harm to the plaintiff occurring primarily or particularly in the forum state." *Id*.

**B.	Application**

For specific jurisdiction to be proper, InterNACHI must show that Lesh took an intentional action that was expressly aimed at Colorado with knowledge that the brunt of the injury would be felt in Colorado. *Dudnikov*, 514 F.3d at 1072. InterNACHI argues that Lesh is subject to personal jurisdiction because Lesh knew InterNACHI's principal place of business is in Colorado and Lesh's article targeted InterNACHI. (ECF No. 11 at 5.) For the purposes of this Motion, the Court accepts these allegations as true. *Dudnikov*, 514 F.3d at 1070.

InterNACHI's allegations satisfy the first and third elements of the "purposeful direction" test. *See id.* at 1072. Lesh's publication of his article in the hardcopy and website versions of *The ASHI Reporter* was an intentional act. *See Silver v. Brown*, 382 F. App'x 723, 729 (10th Cir. 2010). It is also plausible that Lesh knew his actions would have the greatest impact in Colorado since he knew InterNACHI was located in Colorado and conducted its business there. *See id*. at 730.

However, InterNACHI fails to establish that Lesh expressly aimed his conduct at Colorado. The "express aiming" test requires the Court to focus on Lesh's intentions and ask: "[W]here was the 'focal point' of [his] purposive efforts?" *Dudnikov*, 514 F.3d at 1075. The Court cannot agree that the focal point of Lesh's conduct—publication of the article in hard copy or on the internet—was Colorado. Thus, InterNACHI has not made a *prima facie* showing that this Court has specific jurisdiction over Lesh.

The Court's analysis is informed by the Supreme Court's decision in *Calder*. In

that case, the Supreme Court held that jurisdiction in California over two Florida residents was proper. 465 U.S. at 783. The Florida residents wrote and published an unflattering article in the National Enquirer about the actress Shirley Jones, who in turn sued them in California state court for libel. The Supreme Court observed that many components of the article had ties to California:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms of both the respondent's emotional distress and the injury to her professional reputation, was suffered in California.

*Id.* at 788–89. Thus, the Court held that, under the circumstances, "California is the focal point both of the story and of the harm suffered." *Id.* at 789.

The instant case is distinguishable. Unlike in *Calder*, there are no allegations that the home inspection certification industry is particularly tied to any one state or that InterNACHI's activities are centered in the forum state. Indeed, InterNACHI is a national organization with members across the United States that competes nationwide with ASHI for members. (ECF No. 4 ¶¶ 6–9.) Even if ASHI distributed the publication with the offending article to ASHI members in Colorado and throughout the United States (as the *Calder* defendants did), that act alone does not make Colorado the "focal point" of Lesh's activity in publishing the article. For specific jurisdiction to be proper, there must be some other connection to Colorado, other than the mere fact of InterNACHI's presence in the state. *See Walden*, 571 U.S. at 286; *Dudnikov*, 514 F.3d at 1077. Here, InterNACHI has not presented any such facts.

The availability of the article on the internet does not change the analysis. The

9

Tenth Circuit evaluated whether an internet post was "expressly aimed" at a jurisdiction in *Silver* and *Shrader*. *Silver*, 382 F. App'x 723; *Shrader*, 633 F.3d 1235. In *Silver*, the defendant clearly targeted a New Mexico-based business and resident, complaining of their actions that occurred in New Mexico with the aim of influencing persons in that area. *Silver*, 382 F. App'x at 729–30. The Court found that New Mexico was "unquestionably the center of his business activities" and thus the District of New Mexico could exercise jurisdiction over the defendant. *Id.* at 730. However, in *Shrader*, the Tenth Circuit held that the forum state was not the focal point of an internet post by defendant criticizing plaintiff's work, "either in terms of its audience or its content." *Shrader*, 633 F.3d at 1245. Rather, "the email targeted a trading community with no particular tie to [the forum state]" and nothing about the plaintiff's work was inherently tied to the forum state. *Id.* The court thus distinguished *Shrader* from *Calder*, where the plaintiff's work and professional reputation were tied to the entertainment industry in California. *Id.* Stated simply, publication of a critical statement on the internet is insufficient, without more, to establish that a party "expressly aimed" its actions at a particular state where the criticism or plaintiff's work is not inherently tied to the forum state.

Here, ASHI's website posting was widely available. Unlike the post in *Silver*, it did not specifically target InterNACHI's actions in a particular state; rather, at most, ASHI made a veiled reference to InterNACHI's nationwide certification programs. The present dispute is more akin to *Shrader*, where criticism of the plaintiff's business was posted on the internet, but not targeted at the forum state "in terms of its audience or its

content." *Shrader*, 633 F.3d at 1245.

InterNACHI contends that *Shrader* is distinguishable because it did not involve "allegations of intent to harm a competitor in [the forum state]." (ECF No. 11 at 6.) This attempt to distinguish *Shrader* is unavailing. In *Shrader*, the Tenth Circuit determined that "posting allegedly defamatory comments or information on an internet site does not, without more, subject the poster to personal jurisdiction wherever the posting could be read (and the subject of the posting may reside)." 633 F.3d at 1241. The court elaborated on the "without more" requirement and suggested that a court consider, among other things, whether a defendant intended harm to the plaintiff "occurring primarily or particularly in the forum state." *Id.* at 1241. InterNACHI has not pled facts to plausibly support a claim that Lesh intended to harm InterNACHI primarily or particularly in Colorado (as opposed to anywhere else), other than alleging he knew InterNACHI's headquarters are in Colorado. Knowledge that the brunt of the injury will be felt in a particular state is not sufficient to establish that Lesh expressly aimed his actions at Colorado. *Dudnikov*, 514 F.3d at 1077. Without additional allegations that make Colorado the focus of the claim or injury, InterNACHI cannot show that Lesh expressly aimed his actions at Colorado.

Under the facts alleged, the Court finds that Lesh did not purposefully direct his activities at Colorado and therefore, Lesh does not have the requisite minimum contacts to establish specific jurisdiction. Absent general or specific jurisdiction, the Court must dismiss the case without prejudice.

## IV. CONCLUSION

For the reasons set forth below, the Court ORDERS as follows:

1. Defendant's Motion to Dismiss (ECF No. 7) is GRANTED;

2. Plaintiff's claims are DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction; and,

3. The Clerk of Court is DIRECTED TO TERMINATE this action. Each party shall bear his or its own attorney's fees and costs.

Dated this 29th day of November, 2018.

BY THE COURT:

William J. Martinez
United States District Judge